UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | **0101 1:16CR10110-1** |
| | ) | |
| **RAMON BAEZ** | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM
AND
MOTIONS FOR DOWNWARD DEPARTURE**

    NOW COMES the Defendant in the above-captioned matter, by and through counsel, Eric Taitano, Esq., and submits the following Sentence Memorandum to assist the honorable Judge Indira Talwani in sentencing Defendant, which is set for June 13, 2017 at 2:30 pm., and hereby respectfully moves this Court (1.) to reject the guideline recommendation contained in the Pre-sentence Report as excessive, and (2) additionally to depart downward from the otherwise applicable Sentencing Guidelines based on the variety of factors discussed below.

    In support of these Motions, Mr. Baez offers the following incorporated Sentencing Memorandum.

    Mr. Baez requests a hearing on the Guideline application issues raised herein.

**I.       INTRODUCTION**

    Ramon Baez stands before this court deeply regretful of the behavior that has brought him to this place. He is prepared to face the appropriate consequences, and resolved to serve whatever term of incarceration he may face cooperatively and productively. Once he moves beyond this tragic episode, Mr. Baez intends to restart his life in the form of hard work and responsible parenting, in a manner that gives back to society, that which he has heretofore taken from society through his poor choices, selfishness, and recklessness.

    After serving his sentence of incarceration Mr. Baez will be deported, but he is intent on using his time incarcerated to better himself. Mr. Baez will still have his children residing in the United States and they will need his support.

    Ramon Baez has no interest in using the difficulty of his upbringing in an impoverished environment as an excuse for his conduct. For not only does he fully

understand that there is no excuse for engaging in the behavior he has, but also, by nature, Mr. Baez is not one to make excuses.

In sum, the present conviction was the result of a series of tremendously poor decisions. Mr. Baez wishes for nothing more than to take responsibility for these grave missteps and have this episode behind him as soon as possible. Mr. Baez's behavior and attitude since his arrest, has been consistent with those wishes.

### I.     Factual Background

Mr. Ramon Baez has lived in the United States since he was 24 years old. Mr. Baez has three children that live in the United States. He has a 10-year-old ZB, a nine-year-old YB, and a six-year-old SB. Mr. Baez's dedication to supporting his children speaks strongly in favor of reducing his sentence of incarceration in the present circumstances.

The present conviction was the result of a tremendous – indeed, life-altering – act of poor judgment. Mr. Baez has been incarcerated since his arrest and wishes for nothing more than to take responsibility for his own grave mistakes, and have this episode behind him as soon as possible.

### II.    MOTION FOR DOWNWARD DEPARTURE.

Mr. Baez also moves this Court to depart downward from the otherwise applicable sentencing range based on family ties, (U.S.S.G. §5H1.6), Harsher incarceration factor, his unforeseen collateral consequences in punishment as an Alien and in light of the Totality of the Circumstances (U.S.S.G. §5K2.0, Commentary).

### A.    ZB, YB and SB's need for Their Father's Emotional and Financial Support Warrants Downward Departure.

Mr. Baez also asks this court to give special consideration to the plight of his children, whose mother has now fallen into the difficult and tragic status of being a single parent. The Court has the power to depart based on family circumstances "where the family is uniquely dependent on the defendant's ability to maintain existing financial and emotional commitments." United States v. Faria, 161 F.3d 761,762 (2d Cir. 1998). While Mr. Baez's commitments to his children have always been his number one priority, he is also the financial supporter of his children.

Mr. Baez understands that he must utilize his incarceration to better himself because his children will still need his financial support after his release. Mr. Baez understands that he will have to earn an honest living after his incarceration and must develop some skills to enable him to do so.

**B.     Harsher Incarceration Factor Warrants Downward Departure.**

For a period of fifteen months, defendant has been incarcerated at the Wyatt Detention Center and the Plymouth House of Correction in Plymouth Massachusetts, a state facility with extended lockdown, no contact visit, limited programs and opportunities, generally harsher conditions than prevail in a Federal Facility, Mr. Baez argues that this warrants downward departure or other consideration.

In U.S. vs. Brinton (139 F.3d. 718, 9th. Cir. 1998), Judge granted downward departure, citing the condition, which Brinton was held prior to his transfer to a Federal Facility, is not mentioned in the Sentence Guidelines.

In U.S. vs. Bakeas (978 F. Supp. 44.80, D. Mass. 1997), defendant was not eligible for minimum-security facility or a discretionary pre-release community confinement, absent downward departure; defendant would be confined for more onerous conditions. Also holding that U.S. vs. Koon, the Supreme Court recognized downward departure in part on the unusually harsh condition the defendant were likely to experience in prison.

In U.S. vs. Hernandez-Santiago (92 F.3d. 97-101 2nd. Cir.), the Court "had decided to depart downward three levels because the defendant has been incarcerated for 22 months since the day of his arrest in September 1993, to the time of sentencing, in the District Court view a "Harsher Incarceration" than Federal imprisonment because of its lack of educational and therapeutic programs".

Also in U.S. vs. DeLorenzo (C.R. 98-38 ML, D.R.I., March, 1999), granting equivalent one point downward departure for being incarcerated 11 months at the Norfolk House of Correction.

1.) Mr. Baez was subjected to 16 hours a day of lockdown in his cell at Plymouth County.  In a Federal Detention Center Mr. Baez would be subject to approximately an eight-hour period of lockdown including sleeping hours.
2.) In the Plymouth House of Correction the average telephone charge is U$3.27 the first minute, plus U$0.11, the following minutes. This is very expensive for Mr. Baez to communicate with his family.
3.) The Plymouth House of Correction only allows non-contact visits.  The visits are conducted via telephone and the inmates are allowed visits for one hour a week. In a Federal Facility the inmates are allowed contact with visitors and for a period of 8 hours every day of the week.

It is for the above-mentioned reasons that Mr. Baez prays this Honorable Court consider this "good faith" filing in its calculations of his term of incarceration.

### C.     Unforeseen Collateral Consequences in Punishment as Alien Warrants Downward Departure.

Mr. Baez respectfully request that the Sentencing Court consider him a candidate for a downward departure from his Base Offense Level due to "unforeseen collateral consequences" in him being punished as an alien, which would subject him to harsher conditions than otherwise identical citizens who commit similar crimes.

Although this issue has been considered and rejected by at least two other Circuits that have considered the issue of the increased punishments suffered by aliens, as opposed to non-aliens, that was the pre Koon era. Since the Supreme Court's decision in Koon v. U.S. 135 L Ed. 2d 392, 116 S. Ct. 2035, recent decisions have held that deportable aliens could be considered by a District Court for downward departure, where deportable aliens because of their status as deportable aliens, would be subjected to more severe prison conditions than is proper for person of their status as INS Deportee, Security Level is likely to be maximum or high level custody where he is ineligible for the benefits of 18 U.S.C. 3624 (c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentence (but no more than six months) under conditions that will "afford the prisoner a reasonable opportunity to adjust to, and prepare for his re-entry into the community". See Federal Bureau of Prisons Programs Statements, 5100.06, Security Designation and Custody Classification Manual. See also U.S. vs. Sutton, 973 F. Supp. 488 n.2 (D. NJ 1997) (prison conditions warrant downward departure); U.S. vs. Smith, 27 F.3d 649 (D.C. Cir. 1994) (downward departure from recommended range of sentencing guidelines may be appropriate if defendant's status as deportable alien is likely to cause fortuitous increase in severity of his confinement).

In the case at bar, this Court should find no reason to distinguish between prison conditions and Community Correctional Center, etc., for conditions warrant downward departure. See also U.S. vs. Farouil, 124 F. 3d 838 (7th Cir. 1997) downward departure appropriate if defendant's status as deportable alien is likely to cause fortuitous increase in severity of his confinement). Furthermore, as a deportable alien he is prevented from benefiting from certain programs, i.e., Community Treatment Center, Halfway House, Work Release, etc., which would be a violation of the Fourteen Amendment to the U.S. Constitution equal protection clause in Sentence and Punishment.

It is for the above mentioned reasons that Mr. Baez, respectfully prays that this Honorable Court will grant him a two points downward departure from his base offense level due to his status as deportable alien where he is prevented from benefiting from certain Bureau of Prisons Programs in the difference between unforeseen collateral consequences in punishment as alien, than otherwise identical citizen not suffered.

### D.     The Totality of the Circumstances Warrants Downward Departure.

Finally, Mr. Baez asks this Court to consider a downward departure based on the totality of the circumstances when imposing sentencing. "The Commission does not

foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' of cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the circumstances or characteristics individually distinguishes the case. "U.S.S.G. § 5K2.0, Commentary.

Although departures based on the totality of the circumstances are rare, Mr. Baez's case is unusual in the number of facts that independently militate towards a shorter term of incarceration. Those factors have been handled individually above. If the Court does not find either Mr. Baez's needy son or daughter, his harsher incarceration factor, his unforeseen collateral consequences in punishment as alien, or his lack of serious criminality before these events to be independent grounds for departure, the combination of all these things merits a departure of a more general nature. When one considers all of the factors discussed in this memorandum together, it is clear that justice will not be served by a longer term of imprisonment for Mr. Baez. The Court should adjust his sentence accordingly.

Ramon Baez has learned his lesson. He has reconsidered his priorities. And now he wants to move forward productively. He has been in jail for approximately fifteen months already. A sentence of 120 months would serve the sentencing goals of punishment and deterrence. Any more jail time will serve no legitimate public policy.

### III.     OBJECTION TO BASE OFFENSE LEVEL

The Government erroneously states that Mr. Baez is responsible for trafficking in more than 10 kilograms of heroin. The government bases this calculation on intercepted phone calls and their interpretation of Mr. Baez's conversations. However, Mr. Baez states that he is responsible for trafficking in heroin, but less than 10 kilos of heroin. Specifically, the government tries to credit Mr. Baez with drug transactions that did not occur and for amounts that are incorrect. On one intercepted call the government alleges Mr. Baez sold 2 kilos of heroin, when in fact he sold cocaine. On another intercepted call, close in time to when Mr. Baez was arrested, the government alleges Mr. Baez received 5 kilos of heroin when in fact he did not receive any drugs. The agents in this case did seize over 800 grams of heroin, approximately 700 grams of fentanyl, and 11 grams of cocaine from Mr. Baez's home.

**IV.     CONCLUSION.**

For the reasons stated above, the Court should find the Defendant has a base offense level of 32, and a 3-point reduction for acceptance of responsibility, and a 2-point reduction for unforeseen collateral consequences for punishment of an Alien, for a total offense level of 27.  The criminal history category based on 2 points, resulting in criminal history category of II.  The Court should sentence Mr. Alvarado to a term of 120 months; impose a Removal Order upon his release, no fine and the mandatory $100.00 assessment.

June 2, 2017

/s/ Eric Taitano
Eric Taitano, Esq.
BBO#637070
360 Merrimack Street Bldg.5
Lawrence, MA 01843
978.794.7888
Taitanolaw@gmail.com

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on June 2, 2017. No known non registered participants as of June 2, 2017.

June 2, 2017

/s/ Eric Taitano
Eric Taitano, Esq.
BBO#637070
360 Merrimack Street Bldg.5
Lawrence, MA 01843
978.794.7888
Taitanolaw@gmail.com